IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| URS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-415 (SLR) |
| | ) | |
| THE LEBANESE COMPANY FOR THE DEVELOPMENT AND RECONSTRUCTION OF BEIRUT CENTRAL DISTRICT SAL, a/k/a SOLIDERE, | ) | |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT OF THOMAS W. BISHOP

| | |
|---|---|
| STATE OF CALIFORNIA | ) |
| | ) SS.: |
| COUNTY OF SAN FRANCISCO | ) |

Thomas W. Bishop, being duly sworn, deposes and says as follows:

1.    I am a Senior Vice President for Radian International LLC ("Radian") and a Senior Vice President for Plaintiff URS Corporation ("URS"). I submit this affidavit in support of URS's application for injunctive relief in the above-captioned litigation, in which URS seeks a preliminary injunction enjoining defendant the Lebanese Company for the Development and Reconstruction of Beirut Central District S.A.L. a/k/a Solidere ("Solidere") from proceeding against URS in an International Chamber of Commerce arbitration filed in Paris, France. The dispute concerns a contract between Radian and Solidere governing a project for the

1

reclamation of an area of land in Beirut known as the Normandy Landfill (the "Project"). This affidavit is based on my personal knowledge and upon information and belief.

2.    I had been employed by Dames & Moore, Radian's ultimate parent entity, before URS acquired Dames & Moore in 1999. I acted on behalf of Radian, an indirect subsidiary of Dames & Moore, in connection with the Normandy Landfill Project since 2001.

### URS Had No Direct Involvement In The Performance of the Project

3.    As set forth in more detail in URS's Complaint for Declaratory and Injunctive Relief ("Complaint"), Solidere purported to include URS as a party in the ICC Arbitration in the absence of any agreement between URS and Solidere to submit disputes to arbitration.

4.    In the ICC Arbitration, Solidere claims that URS should be a party based on a land rehabilitation contract (the "Contract") between Solidere and Radian concerning land reclamation work on a landfill in Beirut, Lebanon. (A true and correct copy of the Contract appears as Exhibit B to the Complaint.) Solidere asserts that URS is responsible for the work performed by Radian under the Contract and, therefore, is bound by the arbitration agreement contained in the Contract. (A true and correct copy of Solidere's February 13, 2006 Request for Arbitration ("Arbitration Demand") appears as Exhibit A to the Complaint.)

5.    Separate and apart from URS, Radian operates as a construction contractor. The Contract deals exclusively with Radian and the work that Radian was

2

hired by Solidere to perform.

6.      URS is not a party to the Contract, did not sign the Contract or agree to be bound by its terms, had no corporate relationship with Radian at the time Radian entered into the Contract, and it has never entered into any agreement, written or oral, whereby it has agreed to be bound by the terms of the Contract.  To my knowledge, URS has not had any dealings with Solidere other than at the direction of Radian or to assist Radian in Radian's performance of the Contract.  URS has entered into no contracts with Solidere, and has never indicated that it is bound by or agreed to assume any contracts involving Solidere.  In addition, URS has never entered any contracts that incorporate or reference the Contract, or incorporate or reference the arbitration provision in the Contract.

7.      URS also never guaranteed, nor was asked to guarantee, Radian's performance under the Contract by Solidere or anyone affiliated with the Normandy Landfill Project. To the contrary, shortly after URS acquired Radian -- and after Radian had entered into the Contract with Solidere -- Mr. John Rakow, III, sent a letter to the construction manager for the Project, W.A. Fairhurst International ("WAFI") stating that URS had acquired the Dames & Moore Group and all of its subsidiaries, including Radian International LLC.  The letter confirmed that each of the subsidiaries would "continue to operate as separate subsidiaries under their existing names, although all correspondence is now on URS Corporation letterhead."  The letter also confirmed that "Radian International, LLC has not changed its corporate name.  It continues to operate as a separate subsidiary under its own, current name."  Finally, the letter confirmed that

3

Radian's performance under the Contract would not be impacted and that there would be "no change" in Radian's dealings with Solidere. (A true and correct copy of the January 16, 2001 letter by John W. Rakow, III, is attached hereto as Exhibit L.)

8.    To my knowledge, URS did not control the selection and assignment of Radian's executive personnel working on the Normandy Landfill Project. Nor did Radian act as an agent for URS in conducting business transactions related to the Contract with Solidere. At all times relevant to the events alleged in the Complaint, URS did not participate in, control or direct transactions effectuated by Radian. URS was not involved in any negotiations, contracts, or transactions arising out of Radian's activities, and specifically was not involved in Radian's activities pertaining to the Project other than occasionally permitting Radian access to specialists of affiliated companies charged to Radian to assist Radian in its performance under the Contract.

### Personal Involvement In The Project On Radian's Behalf

9.    At all the relevant times in connection with the Project, I understood that I acted only in my capacity as a Radian executive. It was my understanding that all of my correspondence with Solidere in connection with the Project has always been on behalf of Radian. (True and correct copies of my letters to Dr. Nasser Chamma, chairman of Solidere, as selected by Solidere in support of its claims in the ICC arbitration, are attached hereto as Exhibits A through K.)

10.    Most of my time related to Radian and the Normandy Landfill was related to miscellaneous administrative matters until the May 2003 arbitration between Radian and Solidere was initiated. During this time, and to the degree I

4

worked on specific project technical matters, it has been my understanding that the time I spend on Radian project matters has been segregated from the other matters I work on at the project level and thus specifically charged to Radian's projects.

11.    I understand that in its Arbitration Demand Solidere asserts that following URS's acquisition of Radian, all correspondence was submitted to Solidere on URS/Radian letterhead.  (See Arbitration Demand ¶ 172.) That is simply not true. Every one of my letters that Solidere cites in its Arbitration Demand was written on Radian letterhead.  (See Exhibits A through K).  Additionally, I specifically signed many of those letters to Solidere as "Tom Bishop for Radian LLC".  (See Exhibits E through K.)

FURTHER AFFIANT SAYETH NOT:


_____
THOMAS W. BISHOP

SWORN TO ME BEFORE THIS
___ DAY OF OCTOBER 2006


_____
NOTARY PUBLIC


DATED: _____

5

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**

State of California

County of *San Francisco* } ss.

☒ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–5 to be completed only by document signer[s], *not* Notary)

1 _____
2 _____
3 _____
4 _____
5 _____
6 _____

Signature of Document Signer No. 1          Signature of Document Signer No. 2 (if any)

Subscribed and sworn to (or affirmed) before me on this
*18th* day of *October*, *2006* by
       Date            Month            Year

(1) *Thomas W. Bishop*,
                    Name of Signer

☒ Personally known to me
☐ Proved to me on the basis of satisfactory evidence
to be the person who appeared before me (.) (,)
                                              (and

(2) _____,
                    Name of Signer

☐ Personally known to me
☐ Proved to me on the basis of satisfactory evidence
to be the person who appeared before me.)

_____
Signature of Notary Public

**EVA WILKINSON**
Commission # 1392637
Notary Public - California
San Francisco County
My Comm. Expires Jan 3, 2007

Place Notary Seal Above

─── **OPTIONAL** ───

*Though the information below is not required by law, it may prove
valuable to persons relying on the document and could prevent
fraudulent removal and reattachment of this form to another document.*

**Further Description of Any Attached Document**

Title or Type of Document:_____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

| RIGHT THUMBPRINT OF SIGNER #1 | RIGHT THUMBPRINT OF SIGNER #2 |
|---|---|
| Top of thumb here | Top of thumb here |

©2004 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org    Item #5910   Reorder: Call Toll-Free 1-800-876-6827

# EXHIBIT A

# Radian International, LLC

**VIA FACSIMILE**
011-961-1-981-133

April 8, 2003

Dr. Nasser Chammaa
Chairman
The Lebanese Company for the Development
and Reconstruction of Beirut Central District, S.A.L.
Building 149 Marfaa, Saad Zaghoul Street
Off Foch Street, BP. 119493
Beirut, Lebanon

Re:    Normandy Landfill Treatment Contract – Phase 2
       London Meeting

Dear Dr. Chammaa:

Thank you for your letter dated April 4, 2003 agreeing to meet with us in London. We suggest we meet on Wednesday, April 16, 2003 at the Sheraton Park Lane Hotel. In this regard, we are confirming the availability of a meeting room at the hotel on that date. We further suggest that we meet at 9:30 a.m. and reserve the entire day for our discussions.

Our Senior Vice President and Regional Manager Vladimir Khazak, our project manager Amine Bou Oak, our legal counsel John Rakow and myself will represent Radian. During the meeting we would like to personally share with you our view of the gas emission issue, the contract requirements and our recommendations put forth in our February 13th Site Action Plan. Most importantly, we would like to learn Solidere's views concerning the contract requirements and determine what Solidere considers an acceptable resolution of this matter. Finally, we would like to discuss the critical issue of releasing the contract funds previously withheld and the resumption of contract payments.

Sincerely,

Thomas W. Bishop
Senior Vice President

Radian International, LLC
50 Fremont Street, 24th Floor
San Francisco, CA 94105
415.777.0188
Fax 415.847.7964
www.urscorp.com

# EXHIBIT B

# Radian International, LLC

**VIA FACSIMILE**

May 2, 2003

Dr. Nasser Chammaa
Chairman
The Lebanese Company for the Development
and Reconstruction of Beirut Central District, S.A.L.
Building 149 Marfaa, Saad Zaghoul Street
Off Foch Street, BP. 119493
Beirut, Lebanon

      Re:    Normandy Landfill Treatment Contract – Phase 2 Actions to Move Forward

Dear Dr. Chammaa:

Thank you for your letter of April 30th and bringing your concerns to my attention. Let me assure you that we stand by the framework of our agreement forged in London. There has never been an intention to change that framework, only to clarify details so that paths are clearly defined as we implement the framework.

Please find attached a proposed draft of the Memorandum of Understanding (MOU), which I hope you will find satisfactory. John Rakow has provided a copy of this MOU to Dr. Mahmassani.

I look forward to signing the MOU and proceeding with our plans to resolve the differing professional opinions.

Sincerely,

Thomas W. Bishop
Senior Vice President

Radian International, LLC
50 Fremont Street, 24th Floor
San Francisco, CA 94105
415.777.0188
Fax: 415.547.7854
www.urscorp.com

# EXHIBIT C

# Radian International, LLC

0843 4252

SOLIDERE

Land Development Division
Normandy Land
Received on 24/11/03

RECEIVED
24 JAN 2003
SOLIDERE

<u>VIA FACSIMILE & FEDERAL EXPRESS</u>
011 961 1 980661

Dr. Nasser Chammaa
Chairman
**Lebanese Company for the Development and
Reconstruction of Beirut Central District S.A.L.("SOLIDERE")**
Building 149, Saad Zaghloul Street, off Foch Street
P.O. Box 119493
Beirut, Lebanon

cc - Mr P. Ayoub
Mr U. Honnyan
Mr N. Judd

**Normandy Landfill Reclamation – Phase 2
Sections 1 and 2 of the Site**

24/11/03

Dear Dr. Chammaa:

We refer to our meeting in London on October 16, 2003 at which we agreed that you would review your recent certification of the money payable to us under the Contract for work in Sections 1 and 2 of the Site.

In summary, the recent certification (i) undervalues our work in Sections 1 and 2, (ii) results in the wrongful retention of money payable to us under the Contract and (iii) is in breach of both the Contract and the Memorandum of Understanding dated May 13, 2003. We are disappointed that you have to date failed to address this issue despite the agreement reached at the meeting on October 16, 2003. Our position is summarized below.

## Payment status of Sections 1 and 2

We maintain that the works in Section 1 have all been completed (i.e., 100%) and the Section 2 works are virtually complete. Our position is reflected in Payment Certificates issued by the Construction Manager, Fairhurst International Partnership ("Fairhurst"), on your behalf. For example:

(i)    Payment Certificate No. 19 dated January 9, 2001 issued by Fairhurst on your behalf certified 100% of the excavation works in Section 1 had been completed as at November 30, 2000. You made payment on this certificate, which was issued over two and a half years ago.

(ii)   We proceeded with the works in Sections 1 and 2. Payment Certificate No. 49 dated July 11, 2003 certified the works completed as at May 31, 2003. This Certificate

Radian International, LLC
600 Montgomery Street, 25th Floor
San Francisco, CA 94111
Tel: 415.774.2700
Fax: 415.901.8803
www.urscorp.com

copy to: Dr. G. Mahmassani
Mr. H. Karameh

# Radian International, LLC

stated 100% and 99% of the excavation works had been completed in Sections 1 and 2 respectively. You also made payment on this certificate.

(iii)    Payment Certificate No. 50 dated August 11, 2003 certified the works completed as at June 30, 2003. This Certificate stated amongst other things:

| Section 1 | Approved % Complete | Approved Cost to Date |
|---|---|---|
| Excavation | 100% | $ 980,000.00 |
| Sorting | 100% | $ 989,010.00 |
| Treatment | 100% | $ 179,460.00 |
| Hauling | 100% | $ 314,055.00 |
| Backfilling | 100% | $ 315,000.00 |

| Section 2 | Approved % Complete | Approved Cost to Date |
|---|---|---|
| Excavation | 100% | $ 2,850,000.00 |
| Sorting | 100% | $ 2,400,000.00 |
| Treatment | 99% | $ 456,780.00 |
| Hauling | 99% | $ 744,750.00 |
| Backfilling | 86% | $ 643,500.00 |

$ 9,872,555.00

Obviously, we were surprised to find revised percentages in your Payment Certificate No. 51 dated October 2, 2003. This Certificate purported to certify the percentages of works completed as at July 31, 2003 and provided:

| Section 1 | Approved % Complete | Approved Cost to Date |
|---|---|---|
| Excavation | 60% | $ 588,000.00 |
| Sorting | 60% | $ 594,000.00 |
| Treatment | 60% | $ 108,000.00 |
| Hauling | 60% | $ 189,000.00 |
| Backfilling | 60% | $ 189,000.00 |

| Section 2 | Approved % Complete | Approved Cost to Date |
|---|---|---|
| Excavation | 80% | $ 2,280,000.00 |
| Sorting | 80% | $ 1,920,000.00 |
| Treatment | 79% | $ 364,780.00 |
| Hauling | 79% | $ 594,750.00 |
| Backfilling | 76% | $ 572,250.00 |

$ 7,399,780.00

# Radian International, LLC

This results in an under valuation of and underpayment for our works in Sections 1 and 2 in the sum of US$2,472,775 (US$9,872,555 – US$7,399,780).

Review by Dr. Chammaa

With the foregoing in mind, we invited you to review your certification of money payable to us under the Contract for work in Sections 1 and 2. On October 30, 2003 you, your Mr. Karameh and our Mr. Bou Onk met at your offices on the Site to discuss this issue. Mr. Bou Onk explained the certification situation at that time.

At that meeting you requested a proposal from Radian regarding the southern end of Sections 1 and 2 in return for proper certification of the completed works. Notwithstanding our right to proper certification of the Works under the Contract in any event (such right is expressly reserved), we provided a proposal by letter to you dated November 4, 2003. Despite our proposal, we have not received your proper certification of the completed works in Sections 1 and 2.

## Solidere's Latest Payment Certificate

Solidere's and Fairhurst's recent arbitrary valuation and certification of the completed works are highlighted by your Payment Certificate No. 52 dated October 27, 2003. That Certificate was sent to us under cover of Fairhurst's letter dated November 10, 2003 and purports to certify the works completed as at August 31, 2003.

The percentages stated in Payment Certificate 52 are as follows:

| Section 1 | Approved % Complete | Approved Cost to Date |
|---|---|---|
| Excavation | 70% | $ 686,000.00 |
| Sorting | 70% | $ 693,000.00 |
| Treatment | 70% | $ 126,000.00 |
| Hauling | 70% | $ 220,500.00 |
| Backfilling | 70% | $ 220,500.00 |

| Section 2 | Approved % Complete | Approved % Complete |
|---|---|---|
| Excavation | 85% | $ 2,422,500.00 |
| Sorting | 85% | $ 2,040,000.00 |
| Treatment | 85% | $ 391,000.00 |
| Hauling | 85% | $ 637,500.00 |
| Backfilling | 85% | $ 637,500.00 |
| | | $ 8,074,500.00 |

# Radian International, LLC

Payment Certificate No. 52 increases the percentages of the works completed in Sections 1 and 2 which were stated in Payment Certificate No. 51. Your arbitrary approach is illustrated by the fact that we have not undertaken any substantive work in Sections 1 and 2 during the work period covered by Payment Certificate Nos. 51 and 52. In any event, Payment Certificate No. 52 does not state the correct figures, which are stated in Payment Certificate No. 50.

Notwithstanding the increased percentages in Payment Certificate No. 52, there remains an under valuation of and underpayment for our works in Sections 1 and 2 in the sum of US$1,798,055 (US$9,872,555 – US$8,074,500).

<u>Breach of the Contract and the Memorandum of Understanding</u>

Solidere's and Fairhurst's arbitrary approach is not only in breach of the Contract but also contrary to the provisions and the spirit of the Memorandum of Understanding. In effect, the recent certification has the effect of (a) adjusting Payment Certificates issued before May 13, 2003 (that is, the date of the Memorandum of Understanding) and (b) adjusting, and thereby canceling, payments made pursuant to Payment Certificate Nos. 46 and 47. Accordingly, Solidere has failed to comply with both the provisions and the spirit of the Memorandum of Understanding which required you, amongst other things, (i) to release the full amount of all the Contract payments withheld as at May 13, 2003 and (ii) to make payment on Payment Certificate Nos. 46 and 47.

<u>Way forward</u>

In short, the recent arbitrary assessment of our completed works is unreasonable and is in breach of both the Contract and the Memorandum of Understanding. We invite you to address this matter as a matter of urgency, failing which we shall refer this dispute to arbitration.

Yours faithfully,

Thomas W. Bishop
Senior Vice President

cc:  Amine Bou Onk
     Vladimir Khazak

# EXHIBIT D

*From: Dr. Zoki Neemani*

# Radian International, LLC

VIA FEDERAL EXPRESS
VIA FACSIMILE 011 980 133 981 133

September 16, 2004                                                    *20/09/04*

Dr. Nasser Chammaa
Chairman and General Manager
The Lebanese Company for the Development and
Reconstruction of Beirut Central District S.A.L. ("Solidere")
Building 149, Saad Zaghloul Street
Beirut 2012 7305, Lebanon

Normandy Landfill Remediation Contract – Phase 2

Dear Dr. Chammaa:

Thank you for your letter of September 14, 2004. We regret the delay in providing you with the plan to implement the arbitration award and a revised detailed program. It is in both our interests that going forward we work cooperatively to achieve a successful conclusion to this project. We are taking care to provide you with a realistic assessment of what needs to be done and how long it will take to achieve the emissions standards set forth in the contract, even though those standards far exceed what is safe or reasonable for building on the site.

We recognize that our delay in providing the plan to you may mean that you will not have sufficient time to review the plan in advance of the tentatively scheduled September 28 meeting. In that regard, we are happy to reschedule the meeting for a later date to allow you and your consultants an opportunity to review the plan so that there can be meaningful discussion at the meeting.

Sincerely,

*Thomas W. Bishop*

Thomas W. Bishop
Senior Vice President

Radian International, LLC
600 Montgomery Street, 26th Floor
San Francisco, CA 94111
Tel: 415.774.2700
Fax: 415.986.7379
www.urscorp.com





RECEIVED
2 8 SEP 2004
SOLIDERE

# EXHIBIT E

# Radian International, LLC

Dr. Nasser Chammaa
Chairman and General Manager
Solidere
Building 149, Saad Zaghloul Street,
P.O. Box 119493
Beirut, Lebanon

<u>VIA FACSIMILE (011) 961 1981133</u>

July 14, 2005

Dear Dr. Chammaa:

I was very surprised to receive your letter of July 13, 2005, especially in light of the discussions you and I have had in recent weeks. I also must say that your listing of events is not complete and not fair. The Contractor has proposed no fewer than four plans to implement the arbitration award and complete work on the project. Although we believe each and every plan was appropriate and properly implemented the arbitration award and complied with the contract, the Construction Manager and your outside experts objected to provisions of each of the various plans. Our outside experts have worked diligently and in good faith to respond to those objections at meetings both on and off site. Tomorrow we will issue another plan. This fifth plan is the result of lengthy discussions among our respective outside experts and represents what we understand to be an agreement on all technical issues raised to date. We hope and expect your Construction Manager and your outside experts to find this version of the plan acceptable so that there will be no further delays.

Even without regard to the Force Majeure, your approval of the plan is a condition predicate to moving the project forward. Pursuant to Article 14.3, the Contractor is prohibited from starting the Works related to the plan, including the disposition and treatment of the above ground materials and further excavation on the site, until you have given your approval. Please let us know as soon as possible of your approval so that we may commence implementation of the plan.

Finally, as you and I discussed last week, we expect to provide you with our proposed commercial terms within the next week.

We reserve all rights under the contract and applicable law.

Sincerely,

Tom Bishop for Radian LLC

Radian International, LLC
600 Montgomery Street,
29th Floor
San Francisco, CA 94111
Tel: 415.774.2700
Fax: 415.986.7379



# EXHIBIT F

# Radian International, LLC

Dr. Nasser Chammaa
Chairman and General Manager
Solidere
Building 149, Saad Zaghloul Street,
P.O. Box 119493
Beirut, Lebanon

August 26, 2005

Dear Dr. Chammaa:

I write on behalf of Radian International, LLC. On July 12, 2004, the arbitration panel issued its award finding a defect in the Works and requiring remediation of the defect. Radian recognized that it could not unilaterally effect a remediation. Rather, before it could implement any proposed remediation plan, Radian was obligated to seek Solidere's approval or, absent Solidere's approval, seek a determination in arbitration. Accordingly, pursuant to the arbitration award, on September 29, 2004, Radian submitted a comprehensive plan to remedy the defect in the Works. Although Radian believes the September 2004 plan properly implemented the arbitration award, Solidere rejected the plan.

Rather than proceed immediately to an expensive and lengthy arbitration to resolve the dispute over the contents of the plan, with Solidere's express approval, Radian engaged WAFI and its experts in a process to achieve an agreed remediation plan. That process has proved both frustrating and time consuming. Nonetheless, the parties have made significant progress towards arriving at a technical consensus. Earlier this year, after having rejected an expedited plan and an FSQ plan (which was fully compliant with the arbitration award), you and your experts suggested a "third way" that ultimately led to the current form of the plan. The current form of the plan includes handover markers where Solidere may sell portions or all of the site when they are safe for construction without special precautions even though the FSQs for methane and carbon dioxide may not yet have been achieved. On August 1, 2005, Mr. Karameh, your representative, told me that subject to a few comments Solidere would make to the plan, Solidere was pleased with the plan and that I should remove the draft line and submit it in final.

Your letter of August 18, 2005, appears to be a step backward in this process and misstates the events that got us to this point. In addition, your letter suggests a number of changes to what earlier had been agreed by the parties' outside experts or are contrary to the arbitration award. Nonetheless, we have made every effort to adopt those changes that could be sensibly implemented as part of the plan. Attached as table 1 is the list of your proposed changes and our comments on them. Attached as Appendix 1 is a revised plan for your approval. This plan also constitutes a Detailed Programme under the contract, as demanded by WAFI's letter of August 24, 2005.

Radian International, LLC
600 Montgomery Street, 26th Floor
San Francisco, CA 94111
Tel: 415.774.2700
Fax: 415.986.7379
www.urscorp.com



2

You will note that the revised plan continues to include a series of deliverables. Although we are willing to delete those deliverables, please recall that WAFI and your outside experts insisted on a series of deliverables so that Solidere would have the opportunity to review and approve the plan as key decision points arise. If you continue to believe deliverables are appropriate, we would be happy to work with members of your team to reach a consensus on an expected time table, recognizing that most of the deliverables are dependent on the actual results of plan implementation and thus any timetable is at best a gross estimate.

In February of this year, due to the absence of an approved plan, we were rapidly coming to the point where no further meaningful work could be done on the site even without an event of force majeure. As it stands, without a Solidere or arbitrator approved remediation plan we cannot do any meaningful work on the site. This is a problem because Radian has no interest in delaying this project. We believe it is in both parties' interests to provide a site suitable for construction at the very earliest date. In that regard, to the extent you do not accept the latest version of the proposed plan, Radian suggests a meeting among the experts and necessary decision-makers of the parties to reach final agreement or, in the alternative, to narrow the issues that must be determined by arbitration. If this procedure meets with your approval, please let me know at your earliest convenience so that we may check dates of availability.

In the interests of moving this project forward, we have elected not to address all the contract or award-related issues in your letter with which we disagree, and nothing in this letter or the failure to mention any particular issues should be taken as agreement on any such issues. As to those issues, and all others raised in your letter, we continue to reserve all our rights.

Sincerely,

Tom Bishop for Radian LLC

Radian International, LLC
600 Montgomery Street, 26th Floor
San Francisco, CA 94111
Tel: 415.774.2700
Fax: 415.986.7379
www.uracorp.com

3

# EXHIBIT G

# Radian International, LLC

Dr. Nasser Chammaa
Chairman and General Manager
Solidere
Building 149, Saad Zaghloul Street,
P.O. Box 119493
Beirut, Lebanon

Via Facsimile (011) 961 1981133

September 28, 2005

Dear Dr. Chammaa:

04/20/05

This responds to your letter of September 23, 2005.

For the first time in over one year, you have claimed that you have no approval rights over Radian's plan to implement the arbitration award. You have asserted this new position despite having taken the opposite position in your letter of July 23, 2004 and having taken the trouble to reject several proposed plans. Indeed, even in your letter of September 23, 2005 claiming that portions of the plan are "unacceptable." Moreover, notwithstanding your repeated references to the arbitration award having resolved the disputes between us, the award expressly states that "The Tribunal was not asked to render any decision on a methodology for rectification in the event of a decision that the Works were defective." (Award at Section 10.3.) As you must recognize, we are confused by your change of position and request that you confirm by return correspondence that Solidere waives any right under the contract or the arbitration award to approve Radian's plan for remediation and agrees that Solidere has no right to challenge in arbitration or otherwise the methodology for rectification of the defect in the Works provided in Radian's remediation plan.

As to the remainder of your letter, I am surprised by the positions you have taken and reject them. For example, you have referred to the "ill-timed 'Substantial Completion Handover Marker' system." This name was in fact suggested by your experts. Further Section 27 of the contract expressly provides for the possibility of partial completion certificates. It may no longer be your goal to transfer the property to builders at the earliest possible date and therefore you no longer wish to take possession of those portions of the property that are suitable for building as they become suitable. Nonetheless, because you have an obligation to mitigate any claimed damages, we will inform you when portions of the property become suitable for building as they become suitable.

You also claim that Radian's proposed schedule is "unacceptable." We disagree. The schedule is reasonable and does in fact act to remedy the Works as promptly as feasible. Moreover, your contention that there is substantial work that could be completed even without approval of the remediation plan is both wrong and shows little knowledge of how the works must proceed on the site. Until we resolve how to remediate the site we cannot proceed to dispose of the piles of material that have blocked access to much of the site. Indeed,

Radian International, LLC
600 Montgomery Street. 26th
Floor
San Francisco, CA 94111
Tel: 415.774.2700
Fax: 415.986.7379
www.urscorp.com

مولیدیر
- مکتب المدیر العام -
30, 9, 05 : تاریخ الورود
R4 0744 :

because Solidere took the position during the arbitration that Radian had improperly handled previously existing piles of material, Radian properly sought Solidere's approval for the handling of existing stockpiles. As noted above, your recent reversal of position has confused this situation, and we request your clarification.

Finally, we agree that it makes sense to have a meeting if the purpose of the meeting is as we suggested to reach agreement on the form of a remediation plan mutually acceptable to the parties. If that is the purpose of such a meeting, although I am not able to travel to Beirut due to company restrictions, I would be pleased to meet you in Paris on October 4, 2005. We may have to reschedule that date if it makes sense for our respective outside experts to attend the meeting. If you have something else in mind for a meeting, please let me know.

As always, we reserve all our rights.

Sincerely,

*WBishop*

Tom Bishop for Radian LLC

Radian International, LLC
800 Montgomery Street, 28th Floor
San Francisco, CA 94111
Tel: 415.774.2700
Fax 415.986.7378
www.urscorp.com

# EXHIBIT H

# Radian International, LLC

October 12, 2005

Dr. Nasser Chammaa                    <u>VIA FACSIMILE (011) 961 1981133</u>
Chairman and General Manager
Solidere
Building 149, Saad Zaghloul Street,
P.O. Box 119493
Beirut, Lebanon

Dear Dr. Chammaa:

This responds to your letter of October 1, 2005.

Over the past year, you have insisted on your right to approve our remediation and site completion plan. In that regard, you repeatedly commented on and ultimately rejected our proposed plans, even the portions of the plans suggested and agreed by your outside experts. Your most recent correspondence continues to reject the plan and offers comments, many of which contradict agreements reached between the outside experts.

However, your rejection of the plan has made it problematic for us to unilaterally implement the plan even though we believe it properly implements the arbitration award. We do not believe we can unilaterally implement the plan notwithstanding your recent change in position concerning your approval rights. While commenting on and rejecting Radian's plan, you have now begun to claim that you purportedly have no approval rights over the proposed plan. At the same time, you will not (i) waive any approval rights you may have (labeling our request "absurd"), (ii) approve our last proposal, or (iii) agree to a prompt meeting of the experts and key executives to reach agreement on a remediation and site completion plan.

Under these conditions, Radian cannot go forward and implement a plan you have rejected without getting a ruling from an arbitration panel that Radian's plan or some modification of it is appropriate and properly implements the arbitration award. Nor can Radian perform any meaningful work on the site until there is a resolution to the dispute because the work is largely dependent on, among other things, backfilling – a key component of the remediation plan. We are left with no choice but to seek declaratory relief from an arbitration tribunal as to the appropriate remediation and site completion plan.

Although at this point we are resigned to the notion that an arbitration is all but inevitable, I would like to renew my offer to meet with you and your outside experts in a final attempt to reach agreement on a final remediation and site completion plan. We propose that the meeting take place in Paris. As you know, Radian has project supervisory personnel in Beirut. However, as I am sure you understand, there are travel restrictions on company executives, especially during these difficult times. Accordingly, it is not possible

Radian International, LLC
600 Montgomery Street, 26th
Floor
San Francisco, CA 94111
Tel: 415.774.2700
Fax: 415.986.7379
www.urscorp.com

for me to travel to Beirut at this time and I renew the offer to meet at a mutually convenient time in Paris. In addition, because the contract mandates Paris as the location for the settlement of disputes, it is entirely appropriate to hold discussions concerning implementation of the Paris arbitration award in that city.

Because we believe it is in both our interests to resolve this dispute as quickly as possible, we ask your agreement to raise this dispute in the context of the pending arbitration or to arrange a meeting in Paris of the parties' outside experts and decision-makers to conclude a technical agreement. If you do not agree to a final meeting or to resolve the dispute in the pending arbitration, we will have no choice but to commence a new arbitration proceeding.

Please let me know your views as soon as possible.   As always, we reserve all our rights.

Sincerely,

Tom Bishop for Radian LLC

Radian International, LLC
600 Montgomery Street, 26th Floor
San Francisco, CA  94111
Tel:  415.774.2700
Fax: 415.986.7379
www.urscorp.com

# EXHIBIT I

# Radian International, LLC

Dr. Nasser Chammaa
Chairman and General Manager
Solidere
Building 149, Saad Zaghloul Street
P.O. Box 119493
Beirut, Lebanon

November 7, 2005

Dear Dr. Chammaa:

This responds to your letter of October 14, 2005.

Although as a result of your various letters I am uncertain as to whether Solidere believes Radian can unilaterally implement its remediation and site completion plan without regard to Solidere's objections to the plan, Radian believes it cannot do so. In that regard, we believe it will be faster and cheaper to resolve your objections if the parties can do so without proceeding to arbitration. Accordingly, we are pleased to meet in Paris at a mutually convenient time to try to resolve your objections to the remediation and site completion plan. It is our hope that if the parties bring with them both the commercial decision-makers and technical personnel required to resolve Solidere's objections, such a meeting can reach a conclusion without any further steps, thereby permitting Radian's prompt return to work. Please let me know which dates work for you and your team and I will do my best to accommodate them.

Per your request, in anticipation of the upcoming meeting, I am attaching a table of comments responding to the Revised Table of Comments submitted with your September 23, 2005 letter.

As always, we reserve all our rights.

Sincerely,

Tom Bishop for Radian LLC

Attachment: as stated

Radian International, LLC
600 Montgomery Street, Ste 25th
San Francisco, CA 94111
Tel: 415.774.2700
Fax 415. 698.7379

Copy to: Dr. Ghaleb Mahmassani
Mr. Diab Ayoub
Mr. H. Karameh



RECEIVED
0 8 NOV 2005
SOLIDERE

003447

سوليدير
مكتب المدير العام
تاريخ الورود :
رقم : RH/2246

# EXHIBIT J

# Radian International, LLC

December 7, 2005

Dr. Nasser Chammaa                          <u>VIA FACSIMILE (011) 961 1981133</u>
Chairman and General Manager
Solidere
Building 149, Saad Zaghloul Street,
P.O. Box 119493
Beirut, Lebanon

Dear Dr. Chammaa:

This responds to your letter of November 25, 2005. We are disappointed that your experts deny agreeing to what they patently agreed to in their own drafts and correspondence regarding the site completion plan. Further, contrary to the assertions in your letter, Radian's site completion plan does not ignore the FSQs and in fact does remediate the saturated zone. In addition, although Radian has the right to measure and inform you of when the site is ready for construction without the need for specific precautions pursuant to the agreed marker system, it is up to you whether you release the site for construction when the experts (both yours and ours) have agreed it is practical to do so or insist on waiting until the FSQ's are fully met. We simply point out that should you elect to wait until the FSQs are fully met on all portions of the site, you will not have mitigated your alleged damages as required under Lebanese law.[1]

We are satisfied that Radian's site completion plan is appropriate and properly implements the Award. However, under the contract and the award Radian is not free to implement its site completion plan without your approval or the approval of an arbitration panel unless you exercise your right to specifically instruct Radian in that regard (subject to Radian's right to seek a change order). You have not done so.

That being said, your letter contained a potentially constructive idea. You have for the first time suggested the possibility of commencing site evaluation portions of the site completion plan without the need at this point to approve the other elements of the plan. In that regard, with your approval, Radian proposes to immediately implement section 3.2 and a pilot scale test as contemplated in sections 4.2.2 and 4.2.3. Please let me know whether you approve those portions of the plan. Radian will accept such approval without prejudice to your maintaining your objections to other portions of the plan.

Sincerely,

*Tom Bishop*

Tom Bishop for Radian LLC

---

[1]    We note that you insist on placing preconditions on meeting with me to resolve our disputes. That is not a reasonable or constructive approach. For example, you have objected to the consideration of commercial issues as part of our discussions. As you know, there is a pending arbitration proceeding that includes several commercial issues. It would be our intent to reach a global resolution of all disputes between us, and we would hope you would approach any such discussions in good faith with the intent to do the same. In addition, you have insisted on our stating a date for when remediation will be completed even though the outside experts (yours and ours) have stated that this is not possible at least until remediation is in effect and trends can be charted.

Radian International, LLC
600 Montgomery Street, 26th
Floor
San Francisco, CA 94111
Tel: 415.774.2700
Fax: 415.986.7379

# EXHIBIT K

# Radian International, LLC

January 20, 2006

Dr. Nasser Chammaa                                 <u>VIA FACSIMILE (011) 961 1981133</u>
Chairman and General Manager
Solidere
Building 149, Saad Zaghloul Street,
P.O. Box 119493
Beirut, Lebanon

Dear Dr. Chammaa:

This responds to your 6th, 7th, and 8th Notices of Default, dated January 12, 2006 (the "Notices of Default"), and your letter of the same date responding to our December 7, 2005 letter (the "January 12 Response").

As you acknowledge in each of your Notices of Default, the arbitration award required Radian to "provide Solidere with a plan showing how Radian propose that the Works will be completed so as to comply with the Contract." In addition, as you also noted in your Notices of Default, the Contractor is required within ten days of notice of default to provide a "Detailed Programme satisfactory to the Employer that such Event of Default shall be corrected forthwith." Pursuant to Article 1.1 of the Contract, Radian's proposed plan constitutes a "Contract Submittal" and therefore is subject to GC Article 14, requiring Solidere's approval before work under the Contract Submittal may proceed. Indeed, pursuant to Article 14.3, "No portion of the Works requiring a Contract Submittal shall be started until the Employer has returned to the Contractor the Contract Submittals pertaining thereto Approved to proceed as indicated."

I refer you to our letters dated: August 26, 2005; September 28, 2005; October 12, 2005; October 18, 2005; November 7, 2005; and December 7, 2005. As reflected in this correspondence, over the course of the last 18 months Radian has submitted a series of Detailed Programmes and plans to remedy the defect in the Works and complete the project in accordance with the contract. At no time has Solidere approved Radian to proceed under the Detailed Programmes and site completion plans submitted to Solidere.

Following your rejection of Radian's first plan, we engaged our independent experts to work with your experts in an effort to reach technical consensus on a Detailed Programme and site completion plan. That process ultimately produced what your designated experts called the "Third Way" or "Unified Plan." Although in August 2005 Solidere asked Radian to submit that plan in final form for Solidere's approval, Solidere subsequently abandoned the agreements reached between the parties' experts and rejected the plan claiming that the agreed plan does not comply with the contract. Over the next three months, Radian attempted to arrange a meeting among the parties and their experts to resolve whatever technical and commercial issues might remain. Solidere has steadfastly refused to meet.

Radian International, LLC
600 Montgomery Street, 26th
Floor
San Francisco, CA 94111
Tel: 415.774.2700
Fax: 415.986.7378

21 - Jan - 2006
11: 30 .

When Solidere resisted a prompt meeting to resolve the technical issues, Radian offered to implement site characterization portions of the plan while the parties worked to resolve the remaining technical issues. After more than one month, Solidere refused this offer as well and, at the same time, issued a default letter for Radian's failure to implement the site characterization portion of the plan. Obviously, Solidere's contradictory position is both confusing and prevents Radian from commencing work to remedy the defect in the Works.

In any event, there now exists a dispute between the parties as to whether the Detailed Programme and site completion plan submitted by Radian complies with the contract. Because Radian's attempts to proceed with a Detailed Programme and plan satisfactory to Solidere have ultimately not succeeded and Solidere has refused to provide its own instructions on the manner in which the defect in the Works must be remedied, to move this project forward and in response to your Notices of Default, Radian has no choice but to seek arbitration of this dispute. By this letter, Radian informs you that, pursuant to Article 44 of the Contract, it has submitted this dispute for resolution through binding arbitration.

Radian's specific comments to the Notices of Default follow:

<u>6th Notice of Default</u>: failure to submit "'a plan showing how [you] propose that the Works will be completed as to comply with the Contract'" (also referenced as "default no. 3" in your January 12 Response, at p. 6)

  This Notice is baseless. As summarized above, and as evidenced by Radian's submissions over the course of the past year and a half, we have submitted several proposals showing how contractual compliance is to be achieved. In particular, we refer you to the following proposals: September 29, 2004 proposal; March 5, 2005 proposals; May 21, 2005 proposal; July 15, 2005 proposal; August 2, 2005 proposal, and August 29, 2005 proposal. Radian also responded to Solidere's comments to the plans by stating where it believed amendments were appropriate. While Solidere may disagree as to whether each of those proposals, as they may have been amended, is satisfactory, those plans fully satisfied Radian's obligation to set forth the required plan of action and Detailed Programme and to take into account Solidere's comments under Article 14.5 of the contract. Annexed hereto is a black lined modified version of the plan that incorporates Radian's November 7, 2005 responses to Solidere's last round of comments.[1]

  Based on Solidere's refusal to meet further on the plan and its failure to avail itself of its right under the contract to issue instructions regarding remediation of the defect in the Works and completion of the site, there is only one way forward.. As noted above, Radian has initiated arbitration to determine whether its Detailed Programme and site completion plan complies with the contract and, if not, what modifications are required for the Detailed Programme and site completion plan to comply with the contract.

---

[1] We will provide an updated schedule B to the Plan based on the assumption that plan approval is obtained by February 20, 2006. Obviously, if you continue to delay your approval of the plan, the schedule will slip further.

Radian International, LLC
600 Montgomery Street, 26th Floor
San Francisco, CA 94111
Tel: 415.774.2700
Fax: 415.986.7079

**7th Notice of Default: failure to diligently pursue the performance of the Contract (including the failure to perform any remediation trials) (also referenced as "default no. 4" in the January 12 Response, at p.6)**

This Notice is baseless. First, there can be no dispute that Radian is prohibited from implementing its plan unless and until it is approved by Solidere. Radian has repeatedly requested approval for its plan, including versions of the plan approved by Solidere's experts. Any failure to implement the plan is due to Solidere's failure to approve the plan or provide its own instructions for remediation of the defect in the Works and site completion. Solidere thus has prevented that which it demands.

Second, you claim that this Notice is also based upon our "unjustified decision to stop execution of the Works . . . ." (January 12 Response, at 6.) As we explained in our September 3, 2005 letter, the decision to stop execution of the Works was fully justified by the Contract's force majeure provisions. Our decision not to resume the Works, in turn, was caused in the first instance by the continuing force majeure and by our inability to proceed with any meaningful portion of the Works in the absence of your approval of any of the proposals submitted to you.

Finally, your claim that our lack of diligence is embodied in the failure to conduct remediation trials (also echoed in your January 12 Response) is belied by your refusal to approve Radian's express request to begin to implement the site characterization portions of the plan. It is your November 25, 2005 letter that for the first time suggested the possibility that you would approve site characterization without your acceptance of the other portions of the plan. On December 7, 2005, Radian took Solidere up on its suggestion and asked for approval of the site characterization portions of the plan. However, instead of providing prompt approval to begin site characterization, Solidere waited over one month to respond and then rejected the offer claiming that Radian's proposal was "unclear" and somehow made in "bad faith." Nothing could be further from the truth.

*Implementation of Section 3.2 (of Radian's August 29 Proposal)*
This represents the first step in the measurement process and its aim is to provide a framework to ensure reliable characterization of the stockpile materials before the logistical exercise of backfilling commences. All of the stockpiles are currently reasonably accessible and therefore the task can commence at any time. The results obtained will relate to a major proportion of the material processed on site and will provide a statistically robust justification for subsequent backfilling.

*Pilot Scale Test (Section 4.2.2/4.2.3 of Radian's August 29 Proposal)*
Radian's measurement approach is based on selecting areas of the site (in consultation with Solidere) and installing boreholes which will aim to characterize the backfill. While the proposed full programme will require a hazard assessment (given as *4.2.1*) to establish the overall test borehole layout, a small number of test locations can be identified immediately. Once installed, boreholes at these pre-programme locations would enable a useful preliminary (or 'pilot-scale') test of the proposed measurement methodology. The pilot-scale trial would adopt both shallow boreholes, to

Radian International, LLC
600 Montgomery Street, 26th Floor
San Francisco, CA 94111
Tel: 415.774.2700
Fax: 415.986.7979

test the unsaturated zone, and deep boreholes to evaluate the saturated zone. Results obtained would enable fine adjustment (if required) of the proposed full programme and its measurement protocol.

We do not understand why Solidere refused to approve Radian's request to implement site characterization portions of the plan. In any event, Radian renews its offer to immediately implement the site characterization portions of the plan in Sections 3.2, 4.2 and 4.3 pending resolution of the dispute concerning the remainder of the plan. Please inform us as soon as possible of your decision in that regard.

### 8th Notice of Default: refusing to commit as to the timing of the Completion of the Works

This Notice is baseless. As explained in Radian's proposal and prior correspondence, at this time it cannot be known when precisely the site conditions will achieve the FSQs or markers A and B. As you know, Radian's proposal provides for different remediation options depending on site conditions. The effect of the proposed remediation techniques must be monitored and adjusted depending on the actual results. Radian provided a schedule with the August 29, 2005 proposal with as much detail as permitted by the uncertainties at the site. Your own experts concur that a precise date for achievement of the FSQs is not feasible.

### January 12 Response to Radian's December 7, 2005 letter

*Paragraph 1:* Your comments are flat wrong. Radian proposed to implement site characterization portions of plan. Solidere refused. Radian proposed to meet with Solidere and its experts to reach final agreement on the technical portions of the plan. Solidere refused. Solidere has actively prevented performance under the contract.

*Paragraph 2:* Radian has done everything it can to perform under the contract. Solidere, on the other hand, has prevented performance by failing to approve Radian's proposal or, in the alternative, providing Radian with instructions for remediating the site and completing the Works. Further, taking at face value Solidere's stated desire to sell the property as soon as possible, Radian made several proposals to permit such a sale in the short term through expedited plans. Solidere flatly rejected all such proposals. Further, any supposed damage from delay is (1) fully compensated under the express terms of the contract and (2) aggravated by Solidere's refusal to approval any Radian proposal or to instruct Radian on how to proceed.

*Solidere's Response to Radian's Paragraph 1:* There was no distortion of the agreements between the experts. Indeed, email correspondence between the experts establishes beyond any possible dispute that Solidere has simply reneged on the agreements reached between the parties' experts.

*Solidere's Response to Radian's Paragraph 2:* It would appear that the major concern here is that Radian has not assigned a time to achieve the FSQs. However, on several occasions, Solidere's experts and Radian's experts agreed that it would not be feasible to accurately predict the time to

Radian International, LLC
600 Montgomery Street, 26th Floor
San Francisco, CA 94111
Tel: 415.774.2700
Fax: 415.986.7379

achieve the FSQs based on the uncertainties in the parameters that would be used to project site remediation. Your complaint is disingenuous, at best.

*Solidere's Response to Radian's Paragraph 3:* There remains a dispute between the parties as to how to measure compliance with the FSQs in situ. This is a dispute the arbitrators in the first arbitration expressly did not decide. It also is here where we question whether Solidere intends to achieve the contract goals when it attempts to create a measurement technique that is both meaningless and unrelated to whether the site meets the intended purpose. As Solidere argued in the arbitration, the FSQs were based on UK guidance for landfill gases. UK guidance did not call for making volumetric gas measurements in saturated zones. Volumetric measurements are meaningless ,for saturated zone gases that may exist as a result of generation that exceeds solubility and in-situ degradation rates. The contractual FSQs refer to measurements of gas in the gas phase "v/v" and thus must be measured in the unsaturated zone; while measurements of gas in the saturated zone would be gravimetric (e.g. mg/litre).

In the end, there is a dispute between the parties over whether Radian's plan does in fact treat the saturated zone and how FSQ compliance will be measured. Because the parties have reached impasse on these issues, it is appropriate for an arbitration panel to decide them.

*Solidere's Response to its obligation to mitigate damages:* We do not understand why Solidere would not wish to sell the property at the earliest time when it could be established that construction could be performed on site with no specific precautions for landfill gas. That said, if Solidere insists on waiting until full FSQ compliance is achieved, it will not have mitigated its alleged damages as a matter of law.

*Solidere's Response to Radian's request for a meeting:* We have requested a meeting to reach a universal resolution of all disputes between us. You have refused. It is very surprising that a party that supposedly wants to reach agreement on remediation and completion of the project would refuse to meet. As we said in earlier correspondence, we had hoped that our disagreements could be resolved between us without resort to arbitration. That apparently is not to be the case.

*Solidere's Response to Radian's Proposed Schedule:* As stated above, Solidere's demand for a date certain for completion is disingenuous. Solidere's experts indeed concurred that setting a date certain for completion is not feasible. Whether Solidere agrees with the parties' experts or not does not change the fact that predicting such a date is not scientifically feasible.

*Solidere's statements regarding application of GC 14 to the Contract Submittals and Radian's offer to begin site characterization.* Radian has responded to these points elsewhere in this letter.[2]

---

[2]  As for the remaining items included on your list of defaults (see January 12 Response, at p. 6), the first two predate the remediation Award and have little to do with the dispute at hand. In any event, your March 30, 2004 notice of default (re "failure to submit a revised Detailed Programme") was cured by the April 8 Revised Detailed

Radian International, LLC
600 Montgomery Street, 26th Floor
San Francisco, CA 94111
Tel: 415.774.2700
Fax: 415.886.7378

As always, we reserve all our rights.

Sincerely,

*Tom Bishop*

Tom Bishop for Radian LLC

Attachment

---

Programme attached to our letter ref. ABO/CM/567apr04 dated April 8, 2004. In turn, your April 15, 2004 notice of default (re failure to "[c]omplete the Works within the Time for Completion") is a subject in part of the suspended arbitration, but in any event, absent relief for changed circumstances or under other legal theories, the time for completion under the Contract is now subject to remediation of the gas issue. Finally, your November 15, 2005 notice of default concerning insurance coverage was addressed in our November 23, 2005 letter; your renewed claim of default concerning the same subject (dated January 9, 2006) is being addressed under a separate cover.

Radian International, LLC
600 Montgomery Street, 26th Floor
San Francisco, CA 94111
Tel: 415.774.2700
Fax: 415.986.7379

# EXHIBIT L

**URS**

John W. Rakow III, Esq.

January 16, 2001

To Whom It May Concern:

I am sending this letter of explanation to you in accordance with your request. URS Corporation, a publicly-traded engineering and design firm (NYSE: URS), incorporated in Delaware, acquired Dames & Moore Group and all of its subsidiaries (Dames & Moore, BRW, O'Brien Kreitzberg, Radian International and others) in June of 1999. The various Dames & Moore Group companies continue to operate as separate subsidiaries under their existing names, although all correspondence is now on URS Corporation letterhead.

Radian International, LLC has not changed its corporate name. It continues to operate as a separate subsidiary under its own, current name.

You will see no change in the manner in which we serve you or in our commitment to provide you with quality services. All prior commitments, including your contract, will continue to be honored. Please do not hesitate to call me if I can be of assistance or if you have further questions. My direct telephone number is (415) 281-2640.

Sincerely,

John W. Rakow III
Corporate Counsel

URS Corporation
Legal Department
50 Fremont Street, 24th Floor
San Francisco, CA 94105
Tel: 415.777.0188
Direct: 415.281.2640
Fax: 415.547.7954
john_rakow@urscorp.com

## CERTIFICATE OF SERVICE

I, Edward B. Micheletti, hereby certify that on October 23, 2006, the Motion for a Preliminary Injunction Enjoining Arbitration, Statement Pursuant to Local Rule 7.1.1, proposed Order for Preliminary Injunction, Opening Brief in Support thereof, and the Affidavit of David Balfour, Affidavit of Thomas W. Bishop, Affidavit of Amine Bou Onk, Affidavit of Alberto Cuenca and Affidavit of Kristin L. Jones were served electronically on the following counsel of record:

VIA CM/ECF

Samuel A. Nolen, Esquire
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

/s/ Edward B. Micheletti
Edward B. Micheletti (I.D. No. 3794)
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636
(302) 651-3000

474145-Wilmington Server 1A - MSW